**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**BECKER GABRIEL TIRADO IZARRA,**

       Petitioner,

v.                                                                        Civil Action No. **3:26CV148 (RCY)**

**JOSEPH SIMON,**

       Respondent.

## MEMORANDUM OPINION

On March 23, 2026, Becker Gabriel Tirado Izarra ("Petitioner"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition"), alleging that he is and has been unlawfully detained since his arrest by Immigration and Customs Enforcement (ICE) officers on January 20, 2026.  For the reasons set forth below, the Court finds that Petitioner's detention without a bond hearing violates the Immigration and Nationality Act ("INA"), and so the Court will order Respondent to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge, in accordance with his statutory rights.

## I.  PROCEDURAL HISTORY

On December 23, 2026, Petitioner submitted a signed § 2241 Petition, ECF No. 5, and the Court accordingly ordered Respondent to submit a response.  ECF No. 6.  On June 1, 2026, Respondents filed their Opposition to the Petition, ECF No. 10; however, Petitioner has not filed a reply.

## II.  BACKGROUND

Petitioner provides very little information in his § 2241 Petition.  Therefore, the Court must rely on the brief factual background provided by Respondent.  According to Respondent:

       5.       Petitioner is 37-year-old native and citizen of Venezuela.

6. On September 6, 2023, Petitioner applied for admission and was paroled into the United States at the San Ysidro West Port of Entry through the CBP One program. The parole was set to expire on September 6, 2025. The purpose of the parole into the United States was to initiate his removal proceedings with an Immigration Judge.

7. The same day, [the Department of Homeland Security ("DHS") issued and served Petitioner a Notice to Appear and charged him with being removable from the United States under 8 U.S.C. § 1182(a)(7)(A)(i), as an immigrant who, at the time of his application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under regulations issued by the Attorney General under section 211(a) of the Act.

8. On August 30, 2024, Petitioner filed for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture with the Immigration Court.

9. On January 20, 2026, DHS arrested Petitioner during a traffic encounter in Washington, D.C.

10. On February 25, 2026, Petitioner, through counsel, filed written pleadings in the Immigration Court. Petitioner admitted to being an arriving alien and the allegations on the Notice to Appear. In addition, Petitioner conceded to [a] charge of removability under 8 U.S.C. § 1182(a)(7)(A)(i).

11. On April 1, 2026, the Immigration Judge denied Petitioner's applications for relief and ordered him removed from the United States.

12. On April 29, 2026, Petitioner filed a timely appeal with the Board of Immigration Appeals. The appeal remains pending to date.

ECF No. 10-1 ¶¶ 5–12.[1]

### III. STANDARD OF REVIEW

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief 'only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v.*

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, capitalization, and punctuation in the parties' submissions.

*Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (alternations removed).  After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

### IV.  DISCUSSION

Although Petitioner asserts four grounds for relief in his § 2241 Petition, all four challenge his continued detention without an opportunity to contest that detention.[2]

### A.  Detention Under 8 U.S.C. §§ 1225 and 1226

This Court and others have analyzed §§ 1225 and 1226 of the INA repeatedly in recent months.  Absent controlling guidance from either the United States Supreme Court or the Fourth Circuit Court of Appeals,[3] courts in this District have largely coalesced around the consensus that, based on historical application, 8 U.S.C. § 1225(b) and its mandatory detention provisions apply to noncitizens stopped at or near the border who have yet to establish a "presence" in the United States, while 8 U.S.C. § 1226(a) "establishes 'the default rule' for detaining and removing aliens 'already present in the United States'" and entitles such individuals to a bond hearing.  *Hurtado-Barba v. Perry*, No. 3-26-cv-188-MHL, 2026 U.S. Dist. LEXIS 76991, at *6 (E.D. Va. Apr. 8, 2026).

The issue presented by this case is whether Petitioner—who was stopped at the border, released on parole, and thereafter established a presence in the United States, which extended beyond the stated expiration date of his parole—is subject to § 1225(b) or § 1226(a).  Respondent argues that, based on Petitioner's presentation at a port of entry and subsequent release on parole,

---

[2] The Court notes that it lacks Petitioner's original parole documentation, setting out the terms and conditions of his parole and the specific purpose thereof, which would carry implications for the processes by which parole may be terminated, revoked, renewed, or extended.  *See, e..g.*, *Hurtado-Barba v. Perry*, No. 3-26-cv-188-MHL, 2026 U.S. Dist. LEXIS 76991, at *7–9 (E.D. Va. Apr. 8, 2026).

[3] And acknowledging the circuit split represented by *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), and *Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026).

Petitioner is an "applicant for admission" and, "because [Petitioner] was never lawfully admitted, he qualifies as someone seeking admission" and therefore the mandatory detention provisions of § 1225(b) apply.  ECF No. 7 (quoting *Jiminez-Rodriguez v. Garland*, 996 F.3d 190, 194 n.2 (4th Cir. 2021)).

**B.  Impact of Petitioner's Parole on the §§ 1225/1226 Analysis**

Petitioner's status as a parolee renders direct application of much of the §§ 1225/1226 precedent from this District inapposite, as those cases have largely dealt with individuals who entered the country without presenting themselves at a port of entry and otherwise without inspection, and who were first encountered by immigration officials years after their unlawful entry.  *See, e.g.*, *Hasan v. Crawford*, 800 F. Supp. 3d 641 (E.D. Va. 2025); *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025); *Ortega Miranda v. Bondi*, No. 3:25-cv-769-DJN, 2026 WL 287179 (E.D. Va. Feb. 3, 2026); *Buezo Sanchez v. Hott.*, No. 3:25-cv-787-RCY, ECF No. 27 (E.D. Va. Mar. 17, 2026); *Alvarez Munoz v. Simon*, No. 3:25-cv-897-RCY, ECF No. 18 (E.D. Va. Dec. 22, 2025).  Meanwhile, the jurists who *have* faced the issue presented here have reached a variety of conclusions.  Some have determined that § 1225(b) definitively applies to parolees.  *See, e.g.*, *Hasan v. Crawford*, 800 F. Supp. 3d 641 (E D. Va. 2025); *Abreu v. Crawford*, No. 1:24-cv-1782-MSN, 2025 U.S. Dist. LEXIS 4328 (E.D. Va. Jan. 8, 2025).  Others have avoided the question and found due process deficiencies with respect to the revocation of the petitioners' parole in the first instance, granting habeas relief on that ground.  *See, e.g.*, *Pineda-Berrios v. Lyons*, No. 1:25-cv-2332-LMB, 2026 U.S. Dist. LEXIS 29194 (E.D. Va. Feb. 11, 2026); *Hurtado-Barba v. Perry*, No. 3-26-cv-188-MHL, 2026 U.S. Dist. LEXIS 76991 (E.D. Va. Apr. 8, 2026).  And this Court and at least one other have found that the "[p]etitioner's multi-year presence" in the country after the expiration of his parole "entitles him to the same constitutional rights as other noncitizens first discovered years after their entry" and thus entitles him to a bond

4

hearing under § 1226(a).  *Mejias Martinez v. Lyons*, No. 3:25-cv-1021-RCY, 2026 WL 1257330, at *3 (E.D. Va. May 7, 2026) (quoting *Gomez Villalobos*[4] *v. Crawford*, No. 2:26-cv-12-MSD, 2026 WL 1165576, at *4 (E.D. Va. Apr. 29, 2026)).  The Court finds no reason to depart from its prior adoption of the logic of *Gomez Villalobos v. Crawford* in this instance.

As mentioned previously, the record in the present case is not sufficiently developed for the Court to resolve this matter based on due process grounds related to the revocation of Petitioner's parole-release, *supra* n.2, and so the undersigned cannot—without supplemental briefing that would only extend the duration of Petitioner's detention further—follow the path set in cases such as *Pineda-Berrios v. Lyons*, 2026 U.S. Dist. LEXIS 29194, and *Hurtado-Barba v. Perry*, 2026 U.S. Dist. LEXIS 76991.  Accordingly, once again applying *Gomez Villalobos*, this Court finds that Petitioner is entitled to a bond hearing pursuant to § 1226(a).  In *Mejias Martinez*, where this Court first adopted *Gomez Villalobos*, the Court explained as follows:

> After discussing the INA's historical application and courts' "emerging majority view" concerning §§ 1225(b) and 1226(a), Judge Davis [in *Gomez Villalobos*] proceeded to analyze the impact of Petitioner's parole pursuant to 8 U.S.C. § 1182(d)(5) vis-à-vis his status and rights under the INA.  Judge Davis particularly noted that, "[t]hough temporary physical presence in the United States is tolerated when humanitarian parole is granted, it comes with a key 'reservation of rights by the Government':  [t]he Government is authorized to continue to 'treat the non-citizen' on parole 'as if stopped at the border.'"  *Gomez Villalobos*, 2026 WL 1165576, at *3 (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215–16 (D. Mass. 2025), which in turn quoted [*Dep't of Homeland Sec. v.*] *Thuraissigiam*, 591 U.S. [103,] 139 [(2020)])) (also citing 8 U.S.C. § 1182(d)(5)(A) for its explanation that humanitarian parole 'shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States").  Judge Davis acknowledged the Supreme Court's assertion that "'even

---

[4] In *Mejias Martinez*, the Court utilized the case caption appearing on the LEXIS-published iteration of the case, "*Carlos v. Crawford*"; the Court amends its references herein, without further notation, to cite the Westlaw-published opinion and properly reflect the petitioner's actual last name, Gomez Villalobos.  *See Gomez Villalobos*, 2026 WL 1165576, at *1 n.1 (observing that, although the name appearing on the underling petition was "Gomez Villalobos Jhon Carlos," the petitioner's A-Number suggested that his legal name is actually "Jhon Carlos Gomez-Villalobos").

those paroled elsewhere in the country for years pending removal . . . are [fictively] treated for due process purposes as if stopped at the border' when the government later considers their 'rights regarding admission.'" *Id.* at *3 (alteration in *Gomez Villalobos*) (quoting *Thuraissigiam*, 591 U.S. at 139 (cleaned up)).

After noting that Gomez Villalobos's "current detention arguably has earmarks of both § 1225(b), because [Gomez Villalobos] was previously apprehended near the border and paroled under § 1182(d)(5), and § 1226(a), because [Gomez Villalobos] was 'discovered' unlawfully residing in the United States years after his temporary permission to be present expired," Judge Davis proceeded to make his case for why the facts of the case could not "be reasonably construed as a valid continuation of the 'legal fiction' that Petitioner was stopped at the border." *Id.* at *4. Specifically, he wrote as follows:

First, although controlling precedent clearly establishes that the legal fiction of non-presence as applicable to **admission rights** can continue for several years, *Thuraissigiam*, 591 U.S. at 139, some district courts have concluded that *Thuraissigiam* does not directly address whether this fiction extends to the right to be free from **detention** without the minimal process of a detention hearing. *See Torres v. Hermosillo*, No. 2:25cv2687, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026) (explaining that the "entry fiction applied by the Supreme Court in *Thuraissigiam* applied only to noncitizens' rights regarding **admission** and that "the Supreme Court has never applied the entry fiction doctrine . . . to constitutionally justify the **detention** of a person living freely, for years, within the United States" (citations omitted)). To the extent that *Thuraissigiam* does not extend to detention procedures, this Court finds that Petitioner's multi-year presence in the United States entitles him to the same constitutional rights as other noncitizens first discovered years after their entry. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 113 (D. Mass. 2025) (ordering a bond hearing after observing that "to apply the entry fiction doctrine to [a petitioner that was on humanitarian parole for more than three years] is to set aside the plain meaning of the Fifth Amendment altogether"); *Strunin v. Garcia*, No. 5:26cv106, 2026 WL 958952, at *8 (S.D. Tex. Mar. 3, 2026) ("Pretending that Petitioner never entered the United States [during the years he was a parolee] not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." (quoting *Torres*, 2026 WL 145715, at *4)); *Singh v. Bondi*, No. SA-26-CA-00541-XR, 2026 WL 752457, at *8 (W.D. Tex. Mar. 16, 2026) ("Noncitizens who have lived with relative freedom in the United States for extended periods—unlike those detained in immigration processing centers at the border— cannot reasonably be deemed never to have been 'here.'"); *see also Zadvydas* [*v. Davis*], 533 U.S. [678,] 693 [(2001)] (discussing the

6

due process protections that emerge "once an alien enters the country," even if their presence is both unlawful and temporary).

Second, even accepting that the "legal fiction" of non-presence recognized in *Thuraissigiam* extends to **detention** procedures as applied in Q. Li, this Court finds that such fiction ends when a petitioner has enjoyed years of **post-parole** presence. Importantly, unlike in Q. Li, where the noncitizen's parole continued until she was re-detained, Petitioner's brief two-month parole period was followed by more than two and a half years of unauthorized but actual presence.

*Id.* at *4–5 (emphases in original). Judge Davis found compelling the explanation by another district judge facing similar circumstances, quoting as follows:

Petitioner is not subject to the entry fiction despite his previous parole into the United States. As this Court has repeatedly stated, Petitioner's parole expired and he continued to remain in the United States for over a year before he was detained. As a result, Petitioner had a similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts.

*Id.* at *5 (quoting *Rodriguez v. Fields*, No. CV 26-117, 2026 WL 1078101, at *11 (E.D. Ky. Apr. 21, 2026)) (further citing *Escalona v. Noem*, No. 2:26cv769, 2026 WL 885025, at *1 (M.D. Fla. Apr. 1, 2026), which explained in a case where the petitioner overstayed his parole by six months that "[a]pplying § 1225(b)(2) to noncitizens years after they were paroled into the country does not comport with the policy justification for treating noncitizens [already present] in the country differently than those seeking entry").

The Court finds this logic particularly compelling given that, as in *Gomez Villalobos*, Petitioner in this case was not detained in connection with the expiration and termination[5] of his parole, but rather was simply detained after ICE agents randomly "encountered" him and "confirm[ed] Petitioner's identity, nationality, and removability." Byrne Decl. ¶ 10; *accord Gomez Villalobos*, 2026 WL 1165576, at *5. And so, the Court adopts Judge Davis's reasoning and likewise finds that, "like a noncitizen who unlawfully enters the United States and is present for years prior to being detected, here, after Petitioner's short-term parole ended, Petitioner established a multi-year presence prior to being 'rediscovered.'" *Gomez Villalobos*, 2026 WL 1165576, at *5; *accord Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 307 (E.D.N.Y. 2025) ("[I]t would be illogical to find that [the

---

[5] And again, the record is incomplete with respect to whether Petitioner's parole was even subject to automatic termination without notice and an individualized determination with respect to removal. *See Hurtado-Barba*, 2026 U.S. Dist. LEXIS 76991, *8–9 (describing the statutory processes for revocation and termination of humanitarian parole).

7

petitioner] is still in the process of 'arriving' in the United States when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole."). "Precedent thus supports the finding that Petitioner's multi-year unapproved presence affords him some basic procedural due process rights, which here take the form of a full and fair hearing under § 1226(a) to determine the propriety of his continued detention." *Gomez Villalobos*, 2026 WL 1165576, at *5 (citing *Zadvydas*, 533 U.S. at 693).

*Mejias Martinez*, 2026 WL 1257330, at *4–5 (first, fourth through sixth, and ninth through eleventh alterations added). As in *Mejias Martinez*, here, Petitioner's parole ended and he was not detained based on the expiration of his parole. Rather, Petitioner was detained again after agents randomly encountered him. Accordingly, as the Court determined in *Mejias Martinez*, Petitioner is entitled to a bond hearing pursuant to § 1226(a).

## V. CONCLUSION

For the reasons set forth above, Petitioner's § 2241 Petition, ECF No. 5, will be GRANTED. The Court will order Respondent to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge. Accordingly, the Emergency Motion to Expedite Review and Request for Immediate Action, ECF No. 11, will be DENIED as moot.

An appropriate Order will issue.

/s/ _____
Roderick C. Young
Date:  June 30, 2026                                     United States District Judge
Richmond, Virginia

8